IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

**UNITED STATES OF AMERICA**

**vs.**                                                           **CASE NO.: 1:06-CR-014-SPM**

**JESUS GONZALEZ,**

      **Defendant.**
_____/

**ORDER DENYING MOTION TO SUPPRESS**

**THIS CAUSE** comes before the Court upon the "Motion to Suppress Evidence" (doc. 28) filed May 31, 2006 and the Government's response (doc. 31) filed June 8, 2006.  Defendant moves to suppress evidence of a marijuana grow operation located in his residence pursuant to consent given on April 7, 2006.  The Court held a hearing on August 14, 2006, at which the Government and Defendant presented testimony and argument.  For the reasons set forth below, the Court finds the motion must be denied.

**FACTS:**

Law enforcement agents obtained arrest and search warrants for Defendant and his residence in Tarpon Springs, Florida, after conducting controlled phone calls and arranging for a confidential source to visit Defendant's

residence on April 7, 2006.  Late in the evening of April 6, agents learned that Defendant wished to meet the source at another residence, located in Palm Harbor.

On the morning of April 7, 2006, agents drove to the Palm Harbor residence and observed Defendant taking out the garbage.  They pulled up in the driveway, identified themselves and advised Defendant he was under arrest, ordered Defendant to the ground, and handcuffed him.

At this point the stories diverge.  Defendant claims that nothing was said to him outside about searching the house; the agents merely walked him inside, where they noticed two large dogs.  When asked if they would bite, Defendant offered to put them in the backyard.  Defendant and the agents sat down at a table in the kitchen/living room area.  The agents asked whether anyone else was in the house, and Defendant told them that his pregnant fiancee was in a back room.  Moments later, she came down the hall, saw Defendant handcuffed, and began crying.  After Defendant calmed her down, agents permitted her to sit on the couch and watch television.

When the agents presented Defendant with a consent-to-search form, he asked what would happen if he refused to sign it.  The agents told him that they would secure the house and apply for a warrant, which would take a couple of

hours; that based on their experience, they had enough information to persuade a neutral magistrate to sign a search warrant; and that if they searched the house and found what they expected to find, they would arrest everyone in the house.

Defendant asked, "You would arrest my fiancee?" When agents responded affirmatively, Defendant signed the consent form. He testified that the only reason he signed the form was to prevent his fiancee from being arrested.

The Government presented a different story. Agents Durst and Riley both testified that after placing Defendant on the ground, handcuffing him, and reading him his Miranda rights, Defendant stated that he was willing to answer questions. Defendant told the agents that his fiancee was the only other person inside the house, and that he had no weapons, illegal drugs, or large amounts of cash on the property.[1] When the agents asked if they could search the house to confirm that information, Defendant replied, "Yes," and told the agents he wanted to cooperate.

After escorting Defendant inside to a table in the kitchen/living room area, Agents Durst and Riley presented Defendant with the consent-to-search form. Agent Durst explained the purpose of the form and wrote the address in the

---

[1] This statement turned out to be false, as officers discovered $11,000 in cash in a kitchen drawer as well as a substantial amount of marijuana, scales, lighting equipment, and drug-related periodicals including "how-to" information.

appropriate space.  Defendant again stated that he wanted to cooperate, but asked what would happen if he refused to sign the form.

The agents explained that they would apply for a search warrant to a magistrate judge in the Tampa area, which would take a number of hours, and that in the meantime, the house would be secured, meaning that nobody would be allowed to enter or exit.  They told him that in their experience, they possessed information sufficient for a judge to find probable cause and issue the warrant.  Once the warrant was in hand, the agents would return and execute the warrant.  If the agents found what they anticipated they would find in the residence, the agents would arrest everyone in the house at the time, depending on their access to the contraband.[2]

To the extent the testimony differs between the agents and Defendant, the Court finds the agents' testimony to be more credible.

**ANALYSIS:**

Defendant argues that he felt coerced into signing the consent form because of the possibility that his fiancee would be arrested upon execution of the search warrant.  He testified that if it were not for that factor, he would "never"

---

[2] There was evidence that the fiancee was aware of the illegal activities and was enjoying the use of the proceeds derived from marijuana sales.  There was also no indication that the fiancee was restricted in any way (*e.g.*, locked doors) from accessing the parts of the house where the activities took place.

have signed the form or permitted officers to search the residence.

Merely informing the suspect of the consequences of refusing consent does not constitute coercion.  In United States v. Garcia, 890 F.2d 355 (11th Cir. 1989), law enforcement agents rejected appellee's "conditional" consent and told him that if he did not consent to the search of the entire premises, they would apply for and obtain a warrant.  Id. at 361.  In response, appellee permitted agents to conduct a full search.  Id.

The court held that appellee's consent was voluntary and was not merely an acquiescence to authority.  Id.  The court stated:

> The agents never represented to Garcia that they were in possession of a search warrant, or that they could lawfully search his premises without his consent. The agents merely stated that they would not accept Garcia's conditional consent, and that if he refused to consent to a full search, the agents would attempt to obtain a warrant.  Further, defendant adduced no evidence indicating a lack of mental capacity to understand his actions.

Id. (internal record citation omitted).

Similarly, in United States v. Long, 866 F.2d 402 (11th Cir. 1989), the court found that even if officers had told the appellee that if he refused consent, they would "come back and dig the place up" (looking for money buried in the yard), such a statement does not amount to coercion:  "[Appellee] was free to

force the agents to obtain a search warrant and, if at that time, he did not want 'his whole place dug up,' [Appellee] could have cooperated." Id. at 405.

In this case, Defendant had already given his verbal consent to search; signing the form merely reduced the consent to writing. In response to Defendant's question about the consequences of refusing to sign, the agents told him exactly what procedure would be followed and what the likely consequences would be, thereby providing him additional information on which he could base a decision. Simply put, answers to questions and explanations are not threats. That Defendant did not like the explanation he received does not render the consent illegal.

Defendant has not met his burden of showing that his free will was overcome by the agents' actions. Accordingly, it is

**ORDERED AND ADJUDGED** that the motion to suppress (doc. 28) is hereby *denied*.

**DONE AND ORDERED** this fifteenth day of August, 2006.

       *s/ Stephan P. Mickle*
       Stephan P. Mickle
       United States District Judge